United States District Court
Southern District of Texas
**ENTERED**
May 14, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RENE TREVINO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:24-CV-046 |
| | § | |
| JOEL AVALOS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER AND OPINION</u>

In September 2022, Defendant Police Officers Joel Avalos and Arnoldo Maldonado conducted a traffic stop of Plaintiff Rene Trevino, ultimately arresting him. This lawsuit followed. Trevino sued those two officers in a Texas state court, alleging claims under 42 U.S.C. § 1983 for the alleged violations of his rights under the Fourth and Fourteenth Amendments of the United States Constitution. Defendants removed the lawsuit to this Court based on 28 U.S.C. § 1331. (*See* Notice of Removal, Doc. 1)

Trevino has amended his claims three times, and he now alleges violations of his rights under the First, Fourth, and Fourteenth Amendments. He also has named Police Officers Steven Benitez, Westin Wilhite, and Andres Flores as additional defendants. (*See* Third Am. Compl., Doc. 32)

Defendants move for summary judgment as to all of Trevino's causes of action. (Motion, Doc. 40) Based on the record and the applicable law, the Court concludes that Defendants are entitled to the relief that they request.

## I.   Summary Judgment Facts and Procedural History

In March 2025, Defendants filed their Motion for Summary Judgment, submitting, *inter alia*, excerpts from various depositions, including of Trevino and Maldonado, the opinions of Albert Rodriguez regarding use of force procedures, and Maldonado's body camera video from

Trevino's arrest. (*See* Body Camera Footage, Doc. 41)  Trevino filed no response.  While a non-movant's failure to respond to a motion for summary judgment does not automatically entitle the movant to summary judgment, a court may accept the movant's evidence as undisputed and may enter a judgment in the movant's favor if the evidence establishes a *prima facie* showing of the movant's entitlement to judgment. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).  The court still views the evidence in the light most favorable to the non-movant. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Robertson v. City of Bastrop*, No. A-14-CV-0839-SS, 2015 WL 6686473, at *4 (W.D. Tex. Oct. 29, 2015) ("Although, in this case, Plaintiff has failed to respond, the Court views the summary judgment evidence in the light most favorable to the non-movant.") (citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011)).  The Court applies these principles to reach the following findings based on the summary judgment record.

On September 27, 2022, Officers Joel Avalos and Arnoldo Maldonado pulled Trevino over. Maldonado and Avalos approached Trevino's vehicle, where Maldonado explained that he pulled Trevino over for failing to use his left-turn signal.  Trevino responded, "Yeah, I know."[1] (Body Camera Footage, Doc. 41, 1:10)

In response to Maldonado's request for his driver's license and proof of insurance, Trevino said that he did not have his driver's license, but provided his proof of insurance card, his name, date of birth, and driver's license number. (*Id.* at 1:11-2:57)  Trevino told Maldonado that he was going to his sister's house, and had been at his mother's home, where he also lived.  He provided his current address.  When Maldonado asked whether the address was for an apartment or a house, Trevino responded, "that's none of your business, what does it matter?"  Maldonado and

---

[1] Trevino alleges that he "use[d] a turn signal at all necessary times." (Third Am. Compl., Doc. 32, ¶ 19)  But the bodycam video reflects that he unambiguously agreed with Maldonado's statement that he had failed to do so.  A court need not accept a plaintiff's allegations that video evidence "blatantly contradict[s.]" *Scott v. Harris,* 550 U.S. 372 (2007).  Other instances exist in which the bodycam video directly contradicts Trevino's allegations.

Trevino engaged in a tense discussion, and Trevino eventually confirmed that he lived in a house. (*Id.* at 3:55)

Maldonado then asked Trevino to step out of the vehicle. Trevino asked, "For what, sir?", to which the officer responded, "You are being placed under arrest." (*Id.* at 5:13) Trevino again asked, "For what?", and the officer responded, "For not using your turn signal." (*Id.* at 5:16) Trevino disputed that they could arrest him, and made no move to exit the vehicle.

After one or two seconds passed, Maldonado reached through the car window in an apparent attempt to unlock the door. Upon opening the door, Maldonado and Avalos reached into the car and began wrestling Trevino out. During the struggle, the officers repeatedly told Trevino to get out of the car, and Trevino repeatedly said, "For not using a turn signal?" (*Id.* at 5:47) One of the officers drew out a taser, which made a sound. The bodycam video does not depict, however, that either officer ever deployed a taser against Trevino.[2]

After several seconds of wrestling, the officers managed to extract Trevino from the car and brought him to the ground face down. Three other officers had approached, and they jointly held Trevino down to handcuff him. During this encounter, Trevino complained of pain. The officers then pulled Trevino up onto his feet and conducted a pat down of his body.

In February 2024, Trevino filed his lawsuit in a Texas state court. In April, Trevino added Officer Steven Benitez as a defendant, and then Officers Westin Wilhite and Andres Flores in August. (*See* First Am. Compl., Doc. 7; Second Am. Compl., Doc. 19) In January 2025, Trevino filed a Third Amended Complaint, alleging his current causes of action.[3] (Third Am. Compl., Doc. 32)

---

[2] Trevino alleges only that he was "tased or prodded with the taser while already subdued" on the ground. (Third Am. Compl., Doc. 32, ¶ 97) The bodycam video provides no evidence supporting this allegation. At his deposition, Trevino testified that he did not remember getting tased. (Trevino Depo., Doc. 40−1, 4)

[3] At his deposition, Trevino could not specify the alleged wrongful conduct of each Defendant. (Trevino Dep., Doc. 40−1, 24 ("I cannot tell you what any of them did, because I don't know – I don't know who exactly is who by name."))

The Defendants then filed their Motion for Summary Judgment (Doc. 40), to which Trevino filed no response.

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).  "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013); *see also Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).  "[W]hile it is true that a movant cannot support a motion for summary judgment with a conclusory assertion that the nonmovant has no evidence to support his *case*, a movant may support a motion for summary judgment by pointing out that there is no evidence to support a *specific element* of the nonmovant's claim." *Id.* at 335 n.10 (emphasis in original).  Courts cannot "assume, however, in the absence of any proof, that the nonmoving party could or would prove the necessary facts." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009).

## III.    Analysis

Trevino alleges that the Defendants conducted a retaliatory arrest and employed excessive force when doing so, all in violation of his constitutional rights under the First, Fourth, and

Fourteenth Amendments.[4]  In response, Defendants invoke the protections of qualified immunity. (Motion, Doc. 40, 20)

State and local officials sued in their individual capacities for monetary damages are immune from suit if the court finds that qualified immunity applies.  The doctrine protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Courts apply qualified immunity to provide "ample protection" to all government officials except "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine represents "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

When determining whether qualified immunity applies, courts consider a two-part test: (1) whether the defendants' actions violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the defendants' actions. *Pearson v. Callahan*, 555 U.S. 223 (2009).  The first prong requires that the plaintiff establish that a constitutional violation occurred. *See Kinney v. Weaver*, 367 F.3d 337, 361 (5th Cir. 2004) (analyzing the alleged violation of First Amendment rights).  Under the second prong, a court analyzes whether any constitutional violation was "clearly established" at the time of the alleged wrongful conduct.  "A

---

[4] Trevino does not specify whether he sues Defendants in their individual or official capacity.  He summarily alleges that they "were acting under the color of state law, ordinance and/or regulation, statutes, custom, and usages of the Harlingen Police Department." (Third Am. Compl., Doc. 32, ¶ 124)  But he does not sue a government entity and does not identify a policymaker or any alleged policy.  To the extent that Trevino brings suit against the Defendants in their official capacity, the Court concludes that his allegations do not suffice to establish a viable claim for municipal liability. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ("Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.").

right is 'clearly established' if it is 'one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cope v. Cogdill*, 3 F.4th 198, 204–05 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).  A court cannot simply "define clearly established law at a high level of generality." *Mullenix*, 577 U.S. at 12. Rather, the court must focus on "whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis in original); *see also Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987) ("The contours of the right must be sufficiently clear that a reasonable [person] would understand that what he is doing violates that right. . . . [I]n light of preexisting law the unlawfulness must be apparent.").  A plaintiff must "identify[ ] a case in which an officer acting under similar circumstances was held to have violated" a plaintiff's constitutional rights and must "explain[ ] why the case clearly proscribed the conduct" of the defendant officers. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020).

The Court will address each of Trevino's causes of action to determine whether they survive the qualified immunity analysis.

### A. Excessive Force

Trevino alleges that when the Defendants arrested him, they used excessive force, violating his rights under the Fourth and Fourteenth Amendments.  Specifically, he alleges that "Defendants continued to use a taser on Plaintiff even while he was handcuffed and subdued[,]" and "Defendants stated their intention was not only to subdue Plaintiff but also to break Plaintiff's limbs." (Third Am. Compl., Doc. 32, ¶ 121)

Under a qualified immunity analysis, Trevino must establish that the Defendants violated his Fourth Amendment constitutional right to be free from excessive force, which requires a showing of "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (internal quotation marks omitted).  Courts gauge the

reasonableness of the force from the perspective of a reasonable officer on the scene, rather than with "the 20/20 vision of hindsight." *Id.* (internal quotation marks omitted). In determining whether a use of force was reasonable, courts consider the totality of the circumstances, affording "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012). Of course, when the summary judgment record conclusively disproves that the alleged force forming the basis of the excessive force claim ever occurred, summary dismissal is appropriate. *See, e.g.*, *Trevino v. Price*, No. A-22-CV-152-RP, 2022 WL 4360585, at *3 (W.D. Tex. Sept. 20, 2022), *aff'd*, No. 22-51032, 2023 WL 7870599 (5th Cir. Nov. 15, 2023) (granting summary judgment because "[t]he summary judgment evidence conclusively demonstrates no force, let alone excessive force, was used").

Here, the summary judgment record conclusively disproves the second and third elements.[5] Trevino alleges that the Defendants used excessive force through their "continued [] use [of] a taser on Plaintiff even while he was handcuffed and subdued." (Third Am. Compl., Doc. 32, ¶ 121) The summary judgment record conclusively disproves this allegation. The bodycam video never depicts the use of a taser on Trevino. At most, an officer drew a taser and sparked it. Doing so does not amount to the use of a taser for purposes of an excessive force claim. *See, e.g.*, *Muniz v. Davis*, No. A-13-CV-666-LY, 2014 WL 4259385, at *7 (W.D. Tex. Aug. 27, 2014) (finding that the threatened use of a taser, without actual use, does not constitute excessive force). Trevino himself admitted in his deposition that he does not recall any officer tasing him during the

---

[5] As to the injury element, Trevino presents no evidence. But the Defendants submitted portions of Trevino's deposition in which he references that he suffered pain to his head and face and a left finger sprain from the incident. (Trevino Depo., Doc. 40–1, 20) The Court accepts this evidence as sufficing to create a fact issue on the element of injury.

incident.[6] (Trevino Depo., Doc. 40–1, 4)  In other words, the summary judgment record contains no evidence that any officer at any time used a taser on Trevino.  As a result, to the extent that Trevino bases his excessive force claim on the alleged use of a taser against him, no evidence exists that any such use occurred, conclusively defeating the claim.

As Trevino represents himself, the Court will also consider the Defendants' use of force in removing Trevino from the vehicle.  Trevino alleges that he "did not wrestle back or provide any resistance to the arrest." (Third Am. Compl., Doc. 32, ¶ 69)  But the body camera footage indicates otherwise: When Maldonado asked Trevino to exit the vehicle, Trevino responded that they could not arrest him; he made no motion to exit the vehicle or otherwise prepare do to so; he visibly resisted the officers when they opened the door and began to forcibly remove him; during the struggle, the officers repeatedly directed Trevino to get out of the vehicle, and Trevino argued with them. (Body Camera Footage, Doc. 41, 5:25–6:00)  The Court finds that the body camera footage depicts Trevino resisting arrest, as he physically and verbally struggled against his removal from the vehicle and attempted to evade the officers' grasp by pulling away. *See Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (listing Texas state cases finding that pulling out of the grasp of officers is sufficient to constitute resisting arrest).  And when the officers managed to remove Trevino from the vehicle, they quickly forced him to the ground and held him for a brief period while they handcuffed him.

Applying the *Graham* factors to the Defendants' use of force in wrestling Trevino out of the car, the Court finds that the use of force was reasonable and not clearly excessive to the need to subdue Trevino.  Two of the three factors weigh in Defendants' favor.  The severity of the crime in question–resisting arrest–weighs against Trevino, who resisted by attempting to pull out of their grasp for over 30 seconds.  His active resistance also required the officers to exercise

---

[6] He also testified that he assumed that an officer tased him because the officer "was pressing the TASER as if he was tasing me[.]" (Trevino Dep., Doc. 40–1, 11)  But he later stated that an officer "came and he poked me with something[,]" although he clarified that it was "not a TASER." (*Id.* at 12–13)  Even when viewing these statements in the light most favorable to Trevino, the testimony is no evidence that an officer actually used a taser against Trevino.

additional force to overcome the resistance. It is true that a reasonable officer would not have concluded that Trevino posed an immediate threat based solely on his aggressive verbal responses to Maldonado's questions. But when Trevino resisted arrest by pulling away while inside the vehicle, a reasonable officer could have believed that Trevino was reaching for a weapon. (*See* Rodriguez Report, Doc. 40–6, 18 (opining that Trevino's conduct would have placed the officers on "high alert" that he "may be attempting to access a weapon" within the vehicle)) As a result, the second factor of perceived threat of harm proves neutral in the analysis. Based on the totality of the circumstances, the Court concludes that the officers used only reasonable force when removing Trevino from the vehicle, as well as when forcing him to the ground to handcuff him.

In support of this conclusion, the Fifth Circuit has repeatedly concluded that the wrestling of an arrestee, especially when he is resisting arrest, represents a reasonable use of force. *See, e.g.*, *Solis v. Serrett*, 31 F.4th 975, 979 (5th Cir. 2022) (finding no excessive force when, during a minor traffic stop, officers grabbed a belligerent passenger's arms, took her to the ground, cuffed her, and then raised her up); *Priest v. Grazier*, 860 F. App'x 343, 344–45 (5th Cir. 2021) (granting qualified immunity to officers who, after spending two minutes trying to get the plaintiff to lower his window or open his door, broke the window, took him to the pavement, held his face down in broken glass while cuffing him, and struck him three times to get him to stop pulling his hand away); *Tennyson v. Villarreal*, 801 F. App'x 295, 296 (5th Cir. 2020) (granting qualified immunity to officers who "had to take [plaintiff] to the ground to handcuff him because of his noncompliance"); *Collier v. Montgomery*, 569 F.3d 214, 216, 219 (5th Cir. 2009) (holding that an officer reasonably pushed an arrestee onto the hood of a police cruiser, causing some bruises and chest pain, after the arrestee physically resisted by "pull[ing] his hand back and turn[ing] away from the officer" and grappling with him briefly).

As the Court finds no use of excessive force, no constitutional violation of the Fourth Amendment occurred, entitling Defendants to the protections of qualified immunity as to this claim.

Trevino also alleges that the use of excessive force violated his rights under the Fourteenth Amendment.  The Defendants correctly note that a plaintiff bringing an action based on the Fourteenth Amendment must prove elements distinct from those applicable to a claim based on the Fourth Amendment. (*See* Motion, Doc. 40, 24–25)  Here, Trevino fails to allege any of the elements of a due process claim under the Fourteenth Amendment, and the Court is unable to discern a viable claim even when construing the Third Amended Complaint liberally.  Thus, the Court concludes that Trevino fails to allege, must less submit competent summary judgment evidence supporting a claim that the Defendants violated his constitutional rights under the Fourteenth Amendment.

### B.  Retaliatory Arrest

Trevino alleges that "Defendants arrested and detained [him] in retaliation for . . . making a complaint regarding the unnecessary questions and the unnecessary traffic stop." (Third Am. Compl., Doc. 32, ¶ 127)  In their Motion, Defendants argue that as probable cause existed to arrest Trevino, he cannot demonstrate a constitutional violation based on the First Amendment.

To establish a claim for retaliatory arrest in violation of the First Amendment, a plaintiff must show: (1) engagement in a constitutionally protected activity; (2) an injury caused by the defendant's actions that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse actions were substantially motivated by the plaintiff's exercise of constitutionally protected activity. *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).  "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (emphasis in original).  In

other words, the plaintiff must demonstrate "that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399.

Given the requirement of but-for causation, the Supreme Court has established that the presence of probable cause generally defeats a First Amendment retaliatory arrest claim. *Id.* at 406. Probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (internal quotation omitted). The "probable cause analysis only requires that [a court] find a basis for an officer to believe to a fair probability that a violation occurred." *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000) (internal quotation omitted).

Here, Defendants arrested Trevino for (1) failure to use his turn signal, in violation of Texas Transportation Code § 545.104(a); and (2) resisting arrest, in violation of Texas Penal Code § 38.03(a). Focusing on the first ground, the bodycam video renders clear that Maldonado had decided to arrest Trevino no later than when he asked Maldonado to step out of his vehicle. At that time, Maldonado told Trevino that he was under arrest, and when Trevino questioned why, Maldonado informed him that it was for failing to use a turn signal. On that point, the summary judgment record contains no evidence controverting Maldonado's belief that Trevino had failed to use his turn signal. On the contrary, Trevino acknowledged as much in the bodycam video. As a result, the summary judgment record conclusively demonstrates that probable cause existed that Trevino had failed to use his turn signal.

Trevino acknowledges that police officers can arrest individuals for failing to use a turn signal. (Third Am. Compl., Doc. 32, ¶ 114) And Texas courts have confirmed that the state authorizes its police officers to conduct arrests for this traffic violation. *See, e.g.*, *Dogay v. State*, 101 S.W.3d 614, 618 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (finding that police had

probable cause to stop and arrest defendant for speeding and changing lanes without using proper turn signals). Maldonado testified that he had done so on various occasions.

Thus, Defendants possessed probable cause to arrest Trevino from the inception of the traffic stop, based on Trevino failing to use his turn signal, a traffic violation under Texas law. No competent summary judgment evidence creates a fact issue regarding the existence of probable cause, which defeats Trevino's causes of action based on retaliatory arrest.

Trevino alleges that officers "typically exercise their discretion not to do so[,]" and that "Harlingen police officers do not typically arrest people for failure to use a turn signal." (Third Am. Compl., Doc. 32, ¶¶ 115, 117) In making these allegations, Trevino alludes to the language of *Nieves*, where the Supreme Court recognized an exception to the general rule that the existence of probable cause defeats a First Amendment retaliatory arrest claim. Specifically, the Supreme Court concluded "that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 393.

This exception, however, does not help Trevino, as he presents no evidence to support his allegations. Maldonado testified that he had in fact arrested individuals for the same traffic violation that led to Trevino's arrest. And as Trevino failed to respond to the Defendants' Motion, he offers no evidence regarding the typical arrest patterns of the Harlingen Police Department. Thus, to the extent that Trevino relies on the exception that *Nieves* recognized, the exception proves inapplicable.

## IV. Conclusion

For the reasons stated above, it is:

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. 40) is **GRANTED**; and

**ORDERED** that Plaintiff Rene Trevino's causes of action are **DISMISSED WITH PREJUDICE**.

The Court will separately issue a Final Judgment.

Signed on May 14, 2025.

_____
Fernando Rodriguez, Jr.
United States District Judge